COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2559**

STATE OF WISCONSIN

Cir. Ct. No. 2023TR744

IN COURT OF APPEALS
DISTRICT II

CITY OF WEST BEND,

    PLAINTIFF-RESPONDENT,

V.

LOGAN PATRICK LANG,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Washington County: RYAN J. HETZEL, Judge. *Affirmed.*

¶1 NEUBAUER, J.[1] Logan Patrick Lang was convicted after a bench trial of one count of operating a motor vehicle with a prohibited alcohol

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

concentration, contrary to WIS. STAT. § 346.63(1)(b), as adopted by a City of West Bend municipal ordinance. Lang appeals the judgment of conviction, arguing that the officer who conducted his traffic stop lacked reasonable suspicion to prolong his detention for the purpose of conducting field sobriety tests. For the following reasons, this court rejects Lang's arguments and affirms the judgment.

¶2 The following facts are taken principally from the arresting officer's testimony at the suppression hearing. On December 19, 2022, at approximately 11:15 p.m., Officer Kevin Gall of the West Bend Police Department was conducting a routine patrol when he observed Lang's vehicle in the parking lot of Silverbrook Middle School. Since it was late at night, and the school was closed, the vehicle's presence in the parking lot struck Gall as potentially suspicious. Gall then observed the vehicle pull away from the parking lot without its headlights or taillights illuminated and start driving on Silverbrook Drive.

¶3 At that point, Gall conducted a traffic stop of the vehicle. While speaking with Lang, Gall noticed that Lang's speech was slow and slurred and that Lang would sometimes take an unusually long pause prior to responding to Gall's questions. Gall also observed that Lang "seemed to not know exactly where he was coming from" and that there was a faint odor of intoxicants emanating from inside the vehicle. Gall asked repeatedly if Lang had consumed any amount of alcohol that evening but Lang was "adamant" that he had consumed no alcohol whatsoever. Gall found this suspicious in light of the faint smell of intoxicants present. At that point, Gall decided to call for a second officer and place Lang through field sobriety testing. After further investigation, Lang was subsequently issued a citation for operating a motor vehicle with a prohibited alcohol concentration.

¶4      In the trial court, Lang filed a motion to suppress evidence obtained during and after the stop, arguing that it had been obtained in violation of the Fourth Amendment to the United States Constitution.  The court held an evidentiary hearing on the motion at which Gall testified and video of the traffic stop was played.  The court ultimately denied Lang's motion to suppress in a written decision.  The court noted that Lang was not challenging the basis for the initial stop, but instead whether Gall had reasonable suspicion to extend the stop for the purpose of performing field sobriety tests.  The court concluded that the combination of the odor of intoxicants from the vehicle in which Lang was the sole occupant, Lang's operation of the vehicle without headlights, the late hour, and Lang's hesitation in communicating where he was coming from provided reasonable suspicion to extend the traffic stop.  After a bench trial, Lang was convicted of operating a motor vehicle with a prohibited alcohol concentration.

¶5      Lang appeals.

¶6      Whether evidence must be suppressed because it was obtained in violation of the Fourth Amendment is a question of constitutional fact.  *State v. Smith*, 2018 WI 2, ¶9, 379 Wis. 2d 86, 905 N.W.2d 353.  The trial court's findings of fact are upheld unless clearly erroneous, but we "review de novo the application of constitutional principles to those facts."  *State v. Dumstrey*, 2015 WI App 5, ¶7, 359 Wis. 2d 624, 859 N.W.2d 138 (2014), *aff'd*, 2016 WI 3, 366 Wis. 2d 64, 873 N.W.2d 502.  "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence."  *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285.

¶7      Lang argues that the totality of the circumstances did not create reasonable suspicion to extend the traffic stop.  His argument is twofold.  First, he

argues that the trial court gave each of the purportedly inculpatory facts far more weight than they deserve. Second, he argues that the totality of the circumstances includes not only the combination of all inculpatory facts, but also all exculpatory facts and that, consequently, since Gall did not observe Lang exhibit several other signs of intoxication apart from the signs he did observe, those missing signs of intoxication are exculpatory and tip the totality analysis in Lang's favor.[2]

¶8 A law enforcement officer "may stop a vehicle when he or she reasonably believes the driver is violating a traffic law…." *State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999). However, a lawfully initiated stop "can become unlawful if it is prolonged beyond the time reasonably required" to issue a ticket for the original offense. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).

¶9 "After a justifiable stop is made," an officer can extend the stop "to investigate 'additional suspicious factors [that] come to the officer's attention.'" *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124 (citing *Betow*, 226 Wis. 2d at 94); *see also State v. Gammons*, 2001 WI App 36, ¶¶18-19, 241 Wis. 2d 296, 625 N.W.2d 623. "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *Hogan*, 364 Wis. 2d 167, ¶35; *see also State v. Colstad*, 2003 WI App 25, ¶13, 260 Wis. 2d 406, 659 N.W.2d 394. "Although officers sometimes will be confronted with behavior that has a possible innocent explanation, a combination of behaviors—all

---

[2] The signs of intoxication that Gall did not observe and that were noted by Lang in briefing include bloodshot eyes, difficulty with fine-motor skills, failure to follow the rules of the road (setting aside Lang's failure to illuminate his headlights), and erratic vehicle operation.

of which may provide the possibility of innocent explanation—can give rise to reasonable suspicion." *Hogan*, 364 Wis. 2d 167, ¶36. "A determination that reasonable suspicion exists … need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

¶10    In denying Lang's motion to suppress, the trial court identified several articulable facts contributing to reasonable suspicion to extend the stop. The court found that Lang's speech when questioned was "slow," noting that he delayed responding to one of the officer's questions for "10 full seconds." The court also found it suspicious that Lang exhibited difficulty explaining where he was coming from and that Lang appeared "baffled" during that particular line of questioning. The court found that these factors, combined with the late-night hour during which the stop occurred, the odor of intoxicants emanating from the vehicle of which Lang was the sole occupant, and Lang's operating the vehicle without headlights, were sufficient for reasonable suspicion to extend the stop.

¶11    Lang argues that "it was error" for the trial court "to fail to consider how closely his case parallels *Betow*." In *Betow*, the defendant was pulled over for a speeding offense. 226 Wis. 2d at 92. The officer observed that the defendant behaved nervously and had a mushroom embroidered on the outside of his wallet. *Id.* The defendant was detained to await the arrival of a K9 unit. *Id.* at 93. The *Betow* court held that these facts were insufficient for reasonable suspicion to extend the stop to await the K9 unit. *Id.* at 98-99.

¶12    Lang's reliance on *Betow* is unpersuasive because, in the instant case, there were additional suspicious factors that came to the attention of law enforcement which suggested that illegal activity was afoot. Lang's location in a middle school parking lot late in the evening and immediately prior to the stop was

suspicious. The smell of intoxicants further contributed to suspicion, especially after Lang's repeated denials that he had not consumed any alcohol whatsoever. Lang's operation of his vehicle without any exterior illumination could reasonably cause suspicion that his faculties were diminished. Finally, Lang's unusually long delays when responding to officer questioning was not relied upon as evidence of mere, generalized nervousness. Instead, the trial court noted that Lang had little trouble answering certain questions and that he was capable, for instance, of easily locating his driver's license and his brother's insurance information. The court found it suspicious, however, that Lang's apparent difficulty with answering questions only arose when Lang was asked where he was coming from.

¶13 Based on the totality of the circumstances, this court concludes that the officer had the requisite reasonable suspicion to extend the stop of Lang's vehicle to administer field sobriety tests. This court therefore upholds the trial court's denial of Lang's motion to suppress and affirms the judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.